UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MARILYN M. PERKINS,                    )   Case No. EDCV 08-1383-OP
                                       )
                    Plaintiff,         )
                                       )   MEMORANDUM OPINION; ORDER
        v.                             )
                                       )
MICHAEL J. ASTRUE,                     )
Commissioner of Social Security,       )
                                       )
                    Defendant.         )
                                       )

        The Court[1] now rules as follows with respect to the disputed
issues listed in the Joint Stipulation ("JS").[2]

/ / /

/ / /

/ / /

/ / /

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before
the United States Magistrate Judge in the current action.  (See Dkt. Nos. 6, 26.)

[2] As the Court advised the parties in its Case Management Order, the
decision in this case is made on the basis of the pleadings, the Administrative
Record, and the Joint Stipulation filed by the parties.  In accordance with Rule
12(c) of the Federal Rules of Civil Procedure, the Court has determined which
party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

# I.

## DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues which Plaintiff raises as the grounds for reversal and/or remand are as follows:

1.  Whether the Administrative Law Judge ("ALJ") properly considered the opinion of the treating physician;

2.  Whether the ALJ erroneously relied upon evidence from outside the relevant time period, or outside the Administrative Record ("AR");

3.  Whether the ALJ properly analyzed the testimony of the vocational expert ("VE");

4.  Whether the ALJ erred by failing to reconcile the worker's compensation limitations with the social security limitations; and

5.  Whether the ALJ properly evaluated Plaintiff's credibility.

(JS at 10, 22, 28, 31, 33.)

# II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the

2

1    Commissioner's decision must be upheld.  Gallant v. Heckler, 753 F.2d 1450,

2    1452 (9th Cir. 1984).

3                                          **III.**

4                                  **DISCUSSION**

5    **A.    The ALJ Properly Considered and Rejected the Opinion of Plaintiff's**

6           **Treating Physician.**[3]

7           Plaintiff contends that the ALJ failed to provide specific and legitimate

8    reasons, supported by substantial evidence, to reject the opinion of treating

9    physician, Dr. David H. Doty.  (JS at 10-19.)  The Court disagrees.

10          **1.      Applicable Law.**

11          It is well-established in the Ninth Circuit that a treating physician's opinions

12   are entitled to special weight, because a treating physician is employed to cure and

13   has a greater opportunity to know and observe the patient as an individual.

14   McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).  "The treating

15   physician's opinion is not, however, necessarily conclusive as to either a physical

16   condition or the ultimate issue of disability."  Magallanes v. Bowen, 881 F.2d 747,

17   751 (9th Cir. 1989).  The weight given a treating physician's opinion depends on

18   whether it is supported by sufficient medical data and is consistent with other

19   evidence in the record.  See 20 C.F.R. § 404.1527(d)(2).  If the treating

20   physician's opinion is uncontroverted by another doctor, it may be rejected only

21   for "clear and convincing" reasons.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

22   1995); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991).  If the treating

23   physician's opinion is controverted, it may be rejected only if the ALJ makes

24   findings setting forth specific and legitimate reasons that are based on the

25   substantial evidence of record.  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.

26   —————————————

27          [3]  Plaintiff raises several issues here related to her credibility.  (JS at 10-19.)
     As Plaintiff later asserts the ALJ erred in evaluating her credibility, the Court will
28   discuss these issues in the credibility discussion.

2002); <u>Magallanes</u>, 881 F.2d at 751; <u>Winans v. Bowen</u>, 853 F.2d 643, 647 (9th Cir. 1987).

However, the Ninth Circuit also has held that "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." <u>Thomas</u>, 278 F.3d at 957; <u>see also</u> <u>Matney ex rel. Matney v. Sullivan</u>, 981 F.2d 1016, 1019 (9th Cir. 1992). A treating or examining physician's opinion based on the plaintiff's own complaints may be disregarded if the plaintiff's complaints have been properly discounted. <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 602 (9th Cir. 1999); <u>see also</u> <u>Sandgathe v. Chater</u>, 108 F.3d 978, 980 (9th Cir. 1997); <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1043 (9th Cir. 1995). Additionally, "[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict." <u>Andrews</u>, 53 F.3d at 1041; <u>Magallanes</u>, 881 F.2d at 751; <u>Miller v. Heckler</u>, 770 F.2d 845, 849 (9th Cir. 1985).

## 2. **Analysis.**

Here, the ALJ considered Dr. Doty's opinion, determined it was not entitled to controlling weight, and provided specific and legitimate reasons for rejecting the opinion. (AR at 16, 21-23.) Specifically, the ALJ rejected Dr. Doty's opinion, as it was inconsistent and unsupported by the treatment record and findings, inconsistent with other medical opinions, and based primarily upon Plaintiff's subjective complaints. (<u>Id.</u> at 21-23.)

First, the ALJ rejected Dr. Doty's opinion regarding Plaintiff's functional abilities, as it was inconsistent and unsupported by the treatment record. (<u>Id.</u> at 21-22.) The ALJ provided:

1
2
3
4
5
6
7
8
9
10
11

> There is no indication the claimant's condition significantly worsened as of March 2005, at which time, as noted above, the claimant largely performed well during Dr. Doty's examination displaying an antalgic gait and some diminished lumbar spine motion but with no significant radicular pain signs or any loss or neurological functioning. As such, given that Dr. Doty's findings were not significantly different than his early observations and the claimant had not suffered any additional injury and there were no apparent new diagnostic findings of worsening of the claimant's spine, joints, etc., Dr. Doty's revised functional limitations appear internally inconsistent and unsupported, particularly in light of subsequent findings from other medical sources.

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(Id. at 22.)  Contrary to Plaintiff's assertions, the ALJ did not rely upon evidence of Plaintiff's functional abilities prior to the onset date to demonstrate that Plaintiff was capable of performing work.  (JS at 12-13.)  Rather, the ALJ utilized Dr. Doty's previous findings, prior to the onset date, to demonstrate that Plaintiff's significant worsening was a shift from the prior opinions and unsupported by the objective medical evidence.  (AR at 22.)  The record supports the ALJ's contention, as Dr. Doty failed to explain the reasons or provide objective medical support for the greater limitations.  (Id. at 16, 21-22.)  Notably, Plaintiff argues that Dr. Doty listed out several objective factors to support his greater disability finding.  (JS at 12-13.)  However, the Court notes that these factors, which are listed in Dr. Doty's previous reports, suggest an overall improvement in Plaintiff's condition, rather than a justification for greater limitations.  (AR at 377, 381, 386-87, 411, 417.)  Thus, the ALJ properly rejected Dr. Doty's opinion, as the increased functional limitations were inconsistent with and unsupported by the objective evidence.  Thomas, 278 F.3d at 957; see also Matney, 981 F.2d at 1019.

Next, in rejecting the opinion of Dr. Doty, the ALJ relied upon the medical

5

opinions of consultative physician, Dr. Bunsri Sophon, and treating physician, Dr. Thomas Jackson. (AR at 22-23.) On October 4, 2005, Dr. Sophon completed an orthopedic evaluation of Plaintiff. (Id. at 336-40.) Dr. Sophon opined that Plaintiff could perform heavy work as follows:

> Based on the evaluation today, this claimant is able to lift and carry 100 pounds occasionally and 50 pounds frequently. She is able to sit/stand/walk for six hours out of an eight hour workday. She is limited to occasional bending and stooping.

(Id. at 340.) Dr. Sophon's evaluation, based on independent clinical findings, suggests a higher level of physical functioning than Dr. Doty found. The opinion of the consultative physician constitutes substantial evidence, as it was based on independent clinical findings, and any conflict between these findings and Dr. Doty's opinion was for the ALJ to resolve. See Andrews, 53 F.3d at 1041 (opinion of nontreating source based on independent clinical findings may itself be substantial evidence).

The ALJ also relied upon the findings of Dr. Jackson. (AR at 22, 458-81.) The ALJ stated:

> Although Dr. Jackson assessed the claimant in his 2007 examination as precluded from prolonged weight bearing, standing, walking or sitting (25% loss of pre-injury capacity for such activities), he did not specifically preclude the claimant from sitting for longer than 10-15 minutes, and, as noted above, as of the time of his examination, despite x-ray findings of some lumbar spine osteoarthritis, the claimant specifically denied any lower back pain. Moreover, examination of her hips revealed some diminished ranges of motion with tightness and moderate tenderness but with negative straight leg raising in the supine position to 75 [degrees]. X-rays revealed lumbar spondylosis (i.e.,

osteoarthritis) at the L3-4 and L4-5 levels and early right hip osteoarthritis. Thus, given the claimant's denial of back pain, the absence of evidence showing the claimant to have any lumbar disc herniation, bulging, nerve root impingement and the fact that she only has "early" arthritis of her hip, the objective medical evidence is inconsistent with the claimant's pain complaints and Dr. Doty's 2005 assessment.

(Id. at 22.) The record supports the ALJ's findings. (Id. at 458-81.) Here again, Dr. Jackson, based upon independent clinical findings, suggested a greater level of physical functioning than Dr. Doty's assessment. The opinions of both Drs. Sophon and Jackson constitute substantial evidence, as they were based on independent clinical findings, and any conflict between these findings and Dr. Doty's opinion was for the ALJ to resolve. See Andrews, 53 F.3d at 1041

The ALJ also rejected Dr. Doty's assessment, as it was unsupported by the treatment record. As the ALJ noted, there is no evidence that Plaintiff sought out regular medical treatment beyond the end of 2005, despite Dr. Doty's greater functional limitations. (Id. at 22-23.) Moreover, there is no evidence that Plaintiff required any orthopedic devices for functioning, nor is there evidence of surgery, pain management, therapy, or other modes of treatment consistent with Dr. Doty's functional limitations. Thus, the ALJ provided yet another reason for rejecting Dr. Doty's assessment.

Finally, the ALJ rejected Dr. Doty's opinion as it was based largely upon Plaintiff's own complaints. (Id. at 23.) The ALJ stated:

[T]he undersigned finds that Dr. Doty, at least as of his 2005 assessment, appears to have taken the claimant's subjective allegations at face value and merely reiterated those allegations in his reports and when making his assertions regarding the claimant's ability to work.

7

His assertions doe [sic] not take into account the other factors which must be considered by the undersigned, such as the other medical reports and opinions, the lack of ongoing treatment, the claimant's inconsistent behavior and statements regarding her ability to function, as well as the vocational factors involved.  Accordingly, even though the treating physician's opinions have been duly considered, in view of the overall record, they are not found to be persuasive or controlling on the issue of the claimant's residual functional capacity.

(Id.)  The record supports the ALJ's contention.  See infra, Discussion, Part III.E. The ALJ properly rejected Plaintiff's subjective complaints, and thus, properly rejected Dr. Doty's assessment, as it was a mere reflection of Plaintiff's complaints.  Morgan, 169 F.3d at 602; Sandgathe, 108 F.3d at 980; Andrews, 53 F.3d at 1043.

Based on the foregoing, the Court finds that the ALJ provided specific and legitimate reasons, supported by substantial evidence in the record, to reject Dr. Doty's opinion.  Thomas, 278 F.3d at 957; Andrews, 53 F.3d at 1041; Magallanes, 881 F.2d at 751; Miller, 770 F.2d at 849.  Thus, there was no error.

**B.**   **The ALJ Did Not Erroneously Rely Upon Evidence from Outside the Relevant Time Period or Outside the Administrative Record.**

Plaintiff contends that the ALJ erroneously relied upon evidence from outside the relevant time period or outside the Administrative Record.  (JS at 22-28.)  Specifically, Plaintiff argues that the ALJ relied upon a medical opinion prior to the disability onset date, which negatively impacted Plaintiff's disability outcome.  (Id. at 22-23.)  Plaintiff also argues that the ALJ improperly utilized evidence of Plaintiff's ability to work prior to disability onset date.  (Id. at 25-26.)

1    The Court disagrees with Plaintiff's contentions.[4]

2        **1.    Dr. Ma's Opinion.**

3        Plaintiff argues that the ALJ improperly relied upon a report dated May 8,
4    2002, by Dr. Steven Ma.  (Id. at 22-23.)  Plaintiff's argument is without merit.
5    While the ALJ summarized Dr. Ma's findings, he did not afford any special
6    weight to those findings.  (AR at 16, 22.)  In fact, the ALJ only noted that Plaintiff
7    was able to work after her injury and before her onset date, with the limitations
8    cited by Drs. Ma and Doty.  (Id. at 22.)  Ultimately, however, the ALJ relied upon
9    the testimony and opinion of the medical expert ("ME"), not Dr. Ma, to assess
10   Plaintiff's residual functional capacity ("RFC").  (Id. at 23-24.)  Assuming that the
11   ALJ erroneously considered Dr. Ma's opinion, any error would be harmless.
12   Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1991) (harmless error rules
13   applies to review of administrative decisions regarding disability).  The ALJ relied
14   upon the opinion of the ME, which was consistent with the findings of Dr. Ma.
15   (AR at 23-24.)  The ALJ stated:

16        The undersigned finds the conclusions of Dr. Mills regarding his
17        diagnosis and opinions as to the claimant's residual functional capacity
18        are well supported by a medical records review and testimony and
19        generally coincides with and coalesces the findings and limitations cited
20        by Dr. Ma, Dr. Doty (prior to his 2005 assessment), Dr. Sophon, and Dr.
21        Jackson.

22   (Id. at 23.)  Thus, any error here is harmless, and Plaintiff is not entitled to reversal

27        [4] Plaintiff also asserts the ALJ utilized VE testimony, outside of the
28   hearing, to the detriment of Plaintiff's disability application.  (JS at 27-28.)  The
     Court will discuss this issue in the section regarding VE testimony.

9

or remand on this sub-claim.[5]

## 2. **Evidence of Work Activity Prior to the Onset Date.**

Plaintiff next argues that the ALJ used prior work activity to determine that Plaintiff was capable of working after the onset date. (JS at 25-26.) In the decision, the ALJ stated:

> First, the undersigned notes that, despite suffering her injury in 1999 (and not apparently suffering any subsequent injury or trauma to her back or coccyx area), the claimant was able to return to work for several years thereafter and did not ultimately cease working until October 2004, when the claimant had her apparently successful shoulder surgery.

(AR at 21-22.) Plaintiff argues that the ALJ assumed that because she could work in the past, she could work in the present. (JS at 26.) This argument is unsupported by the record. The ALJ based his disability determination upon several factors, including the objective medical evidence, Plaintiff's credibility, VE and ME testimony, Plaintiff's RFC, and Plaintiff's past relevant work. (AR at 13-25.) The ALJ never stated that Plaintiff was able to work because of her ability to work after her injury. Thus, Plaintiff's argument is without merit, and Plaintiff is not entitled to reversal or remand on this sub-claim.

## C. **The ALJ Posed a Complete Hypothetical to the VE.**

Plaintiff's next claim is that the ALJ improperly analyzed the VE testimony. (JS at 28-30.) Plaintiff argues that the hypothetical posed to the VE did not contain the limitations set forth by the ME, which the ALJ expressly adopted.

---

[5] Defendant notes that evidence prior to the onset date is relevant to a plaintiff's disability application, and thus, included in the record. (JS at 24.) The Court notes that while this may be true, it is irrelevant here. Dr. Ma's findings were consistent with the findings of the ME. Thus, any error here would be harmless. See supra, Discussion, Part III.B.1.

1    (Id.)  The Court disagrees.

2         **1.    Applicable Law.**

3         "In order for the testimony of a VE to be considered reliable, the

4    hypothetical posed must include 'all of the claimant's functional limitations, both

5    physical and mental' supported by the record."  Thomas, 278 F.3d at 956 (quoting

6    Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir. 1995)).  Hypothetical questions

7    posed to a VE need not include all alleged limitations, but rather only those

8    limitations which the ALJ finds to exist.  See, e.g., Magallanes v. Bowen, 881 F.2d

9    747, 756-57 (9th Cir. 1989); Copeland v. Bowen, 861 F.2d 536, 540 (9th Cir.

10   1988); Martinez v. Heckler, 807 F.2d 771, 773-74 (9th Cir. 1986).  As a result, an

11   ALJ must propose a hypothetical that is based on medical assumptions, supported

12   by substantial evidence in the record, that reflects the claimant's limitations.

13   Osenbrock, 240 F.3d at 1163-64 (citing Roberts v. Shalala, 66 F.3d 179, 184 (9th

14   Cir. 1995)); see also Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)

15   (although the hypothetical may be based on evidence which is disputed, the

16   assumptions in the hypothetical must be supported by the record).

17        **2.    Analysis.**

18        At the hearing, the ME, Dr. Harold Mills testified that Plaintiff's sitting

19   ability would be limited.  (AR at 498.)  Specifically, the ME stated, "[S]he could

20   not sit more than two hours at one time and . . . six hours in an eight-hour work

21   day would be fine."  (Id.)  Thereafter, the ALJ posed the following hypothetical to

22   the VE:

23        I'm going to ask you to assume a hypothetical individual who could

24        lift 20 pounds occasionally, 10 pounds frequently; who could sit for

25        up to six hours a day with normal breaks and who could assume the

26        postural positions on an occasional basis.  Could such a hypothetical

27        individual perform any of the claimant's past relevant work?

28

11

1   (AR at 501.)  The VE responded that Plaintiff would be able to perform her past

2   relevant work as a clinical nurse manager, as she actually performed the job.  (Id.

3   at 501-03.)

4          In the decision, the ALJ assessed Plaintiff's RFC as follows:

5          After careful consideration of the entire record, the undersigned finds

6          that the claimant has the residual functional capacity to perform light

7          work as defined in 20 CFR 404.1567(b) not involving standing or

8          walking more than 4 hours total per 8-hour workday, sitting more than

9          2 hours at a time or more than 6 hours total per 8-hour workday or more

10         than occasional postural movements (e.g. bending, squatting, stooping,

11         etc.)

12

13  (Id. at 19-20.)  The ALJ then indicated that he adopted the functional limitations

14  set forth by the ME.  (Id. at 23-24.)  Thereafter, the ALJ opined that Plaintiff was

15  capable of performing her past relevant work as a clinical nurse manager, or a

16  general duty nurse, as Plaintiff actually performed it.  The ALJ stated:

17         As noted above, the DOT defined the job of "clinical nurse

18         manager" as requiring the full range of "light" work activity.  Insofar as

19         the claimant is restricted to a residual functional capacity for less than

20         a full range of "light" work, she would be unable to perform her past

21         work as ordinarily required.  However, the claimant described her past

22         work in this capacity as requiring no more than 2 hours of walking per

23         day, 1.5 hours of standing per day and 6 hours of sitting per day, which

24         comports with the claimant's limitations.

25         Therefore, based on the claimant's residual functional capacity

26         and the testimony of the vocational expert, the undersigned finds that the

27         claimant is capable of performing her past relevant work as a clinical

28         nurse manager, as actually performed.

12

1   (Id. at 24.)

2        The Court finds that the ALJ erred in failing to provide the VE with an

3   express limitation for sitting no more than two hours at one time, as opined by the

4   ME and reiterated in the ALJ's RFC assessment.  However, any error here was

5   harmless.  Curry, 925 F.2d at 1131.  The ALJ's hypothetical assumes "normal

6   breaks" in Plaintiff's sitting position.  Noting that the ALJ opined that Plaintiff's

7   past relevant work was actually sedentary work, Defendant correctly points to

8   Social Security Regulation ("SSR") 96-9p, which provides a guideline for

9   customary breaks during a work-day as follows:

10          In order to perform a full range of sedentary work, an individual must

11          be able to remain in a seated position for approximately 6 hours of an 8-

12          hour workday, with a morning break, a lunch period, and an afternoon

13          break at approximately 2-hour intervals.

14
15   SSR 96-9p.[6]  Thus, customary breaks, or "normal breaks," would reasonably occur

16   approximately every two hours.  Id.  Given the fact that the ALJ heard testimony

17   from the ME regarding Plaintiff's inability to sit for longer than two hours, and

18   that the ALJ included the sitting limitation in the RFC assessment, the Court

19   reasonably infers that the ALJ meant for "normal breaks" to be consistent with

20   SSR 96-9p, which allows for breaks approximately every two hours.  Accordingly,

21   the Court finds that any error here by the ALJ was harmless, and Plaintiff is not

22   entitled to reversal or remand on this claim.

23   / / /

24   / / /

25   / / /

26

27          [6] Social Security Rulings are binding on ALJs.  See Terry v. Sullivan, 903

28   F.2d 1273, 1275 n.1 (9th Cir. 1990).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**D.     The ALJ Did Not Err in Failing to Call an Expert to Reconcile the Distinctions Between Worker's Compensation Limitations and Social Security Limitations.**

Plaintiff claims that the limitations expressed by his treating physician, Dr. Jackson, in relation to his worker's compensation claim are different than the limitations expressed in social security matters.  (JS at 31-32.)  Plaintiff argues that the ALJ failed to use an expert witness to reconcile these differences.  (Id. at 32.)  The Court disagrees.

Plaintiff provides no authority for the requirement that an expert witness testify as to the worker's compensation limitations.  Additionally, Plaintiff fails to distinguish which portions of Dr. Jackson's findings needed clarification.  Here, the ALJ properly summarized Dr. Jackson's assessment of Plaintiff's limitations in the decision.  (AR at 17, 23.)  Thereafter, the ALJ adopted the opinion of the ME, noting that this opinion was consistent with the findings of other medical sources, including Dr. Jackson.  (Id. at 23-24.)  Moreover, the ME testified that he relied upon Dr. Jackson's report in assessing Plaintiff's functional limitations.  As Defendant accurately argues, Plaintiff fails to explain why another expert witness would be required to clarify Dr. Jackson's opinion.  Thus, Plaintiff's argument is without merit, and Plaintiff not entitled to reversal or remand on this claim.

**E.     The ALJ Properly Considered Plaintiff's Subjective Complaints and Properly Assessed Plaintiff's Credibility.**

Lastly, Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for rejecting Plaintiff's subjective complaints of pain.  (JS at 33-35.)  The Court disagrees.

**1.     Applicable Law.**

An ALJ's assessment of pain severity and claimant credibility is entitled to

14

"great weight."  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986).  When, as here, an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, the ALJ must make explicit credibility findings.  Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981); see also Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit finding that claimant was not credible is insufficient).

Under the "Cotton test," where the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so.  See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991).

To determine whether a claimant's testimony regarding the severity of his symptoms is credible, the ALJ may consider, *inter alia*, the following evidence: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; and (4) testimony from physicians and third parties concerning the nature, severity, and effect of the claimant's symptoms.  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also Smolen, 80 F.3d at 1284.

SSR 96-7p further provides factors that may be considered to determine a

15

claimant's credibility such as: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain and other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p.

## 2.    **Analysis.**

Here, the ALJ discredited Plaintiff's subjective symptoms of pain for the following reasons:  (i) there was no evidence of treatment after 2005, contradicting Plaintiff's allegations of pain; (ii) Plaintiff's daily activities were inconsistent with her allegations of disabling pain; and (iii) the ALJ's own observation of Plaintiff's behavior contradicted her allegations of severe pain.  (AR at 17, 21-24.)

First, the ALJ based his adverse credibility finding on the lack of support in the objective medical record, as evidenced by the lack of treatment after 2005.  (Id. at 22-23.)  The ALJ stated:

> [A]s noted above, despite the claimant's allegations of disabling pain with relief only provided by therapy and medication, there is no evidence the claimant sought out or received ongoing medical treatment beyond the end of 2005.  The claimant admitted to Dr. Jackson that she had not been to Dr. Doty since 2005 and only continues to go for chiropractic treatment periodically.  There is also no evidence the claimant requires an assistive device for walking, a back brace, or any

16

1
2
3
4

other orthopedic device.  As such, there is no particular evidence of the need for ongoing pain management, surgery, physical therapy, or other significant treatment from and after the claimant's alleged disability onset date.

5
6
7
8
9
10
11
12
13
14
15

(Id.)  The record supports the ALJ's contention.  From January 2005 through April 2007, Plaintiff's medical treatment consisted of a recommendation from Dr. Doty for a surgical evaluation.  (AR at 469.)  While Plaintiff stated to Dr. Jackson that she regularly attended chiropractic treatments, Plaintiff failed to provide any evidence supporting her assertion.  Aside from these alleged chiropractic sessions, Plaintiff has not pursued any significant medical treatment, such as surgery, orthopedic braces, hospitalization, or other substantial treatment, which would support her allegations of disabling pain.  Moreover, Plaintiff reported to both Drs. Doty and Jackson that she experienced some pain relief.  (Id. at 381, 387, 395, 462-63.)  Given Plaintiff's lack of treatment, the ALJ properly rejected Plaintiff's allegations of disabling pain.[7]

16
17
18
19
20

 Next, relying upon Plaintiff's own description of her daily activities, the ALJ found Plaintiff not be a credible witness and discredited the severity of her subjective complaints.  (AR at 23.)  The ALJ discredited Plaintiff's testimony as to her subjective complaints as follows:

21
22
23

[T]he claimant had provided inconsistent statements regarding her ability to perform daily living activities.  For instance, the claimant told Dr. Rooks in September 2004 that, while she can no longer hike and

24
25
26
27
28

[7]  Plaintiff also argues that no treatment options were available to her. However, Plaintiff's contention is belied by the record.  Plaintiff's treating physician recommended alternative orthopedic procedures for pain relief, which Plaintiff failed to pursue.  (AR at 477.)  Thus, Plaintiff's argument as to a lack of treatment options is without merit.

1
2
3
4
5
6
7
8
9
10
11
12

walk for 2 miles, she is capable of showering, caring for her personal hygiene, tending to her various pets, doing laundry, polishing, and other light household chores, driving short distances, reading, watching television, lifting light objects and sustaining social interaction. The claimant generally reported similar abilities in her daily function report but then alleged that she cannot "lift anything," or stand, walk, knee[l], or climb stairs without pain. The claimant's statements about what she can and cannot do in terms of daily living activities also appears internally inconsistent and, as noted above, her allegations of disabling pain with virtually all movements is unsupported by the objective medical findings and apparent lack of need for ongoing treatment or pain management.

13
14
15
16
17
18
19
20
21
22
23
24
25

(Id.) The record supports the ALJ's finding. (AR at 97, 491-95, 499-501, 519-20.) The Court finds that the ALJ could properly rely on Plaintiff's daily activities, such as completing household chores, driving, and grooming, to support his adverse credibility determination. See, e.g., Thomas, 278 F.3d at 958-59 (ALJ may properly consider inconsistencies between claimant's testimony and claimant's daily activities); Morgan v. Apfel, 169 F.3d 595, 599-600 (9th Cir. 1999) (ALJ may properly rely on contradictions between claimant's reported limitations and claimant's daily activities); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (daily activities inconsistent with total disability undermined subjective testimony of disabling pain); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ may properly rely on claimant's daily activities, including ability to drive); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (ALJ may properly rely on daily activities inconsistent with claim of disabling pain); SSR 96-7p.

26
27
28

Lastly, the ALJ relied on his own observation of Plaintiff's pain during the hearing. (AR at 23.) The ALJ stated:

> At the hearing, claimant was able to remain seated in a seemingly comfortable manner for much longer than 10-15 minute period to which she is allegedly limited and, despite alleging being in severe pain, her demeanor and ability to remain focused during the hearing appeared inconsistent with someone experiencing severe discomfort.

(Id.) Thus, the ALJ relied on ordinary techniques of credibility evaluation to discredit Plaintiff's disabling symptoms. Thomas, 278 F.3d at 958-59; see also Smolen, 80 F.3d at 1284.

Based on the foregoing, the Court finds that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's subjective symptoms and discounting her credibility. Thus, there was no error.[8]

/ / /

/ / /

/ / /

/ / /

/ / /

---

[8] The ALJ also implicitly rejected Plaintiff's allegations of disabling pain by relying upon the opinions of several consultative examiners, all of whom found Plaintiff to have greater functional abilities than her pain would otherwise suggest. (AR at 21-24.)  For example, the ALJ adopted the opinion of the ME, who opined that Plaintiff can perform light work, with the limitation that she occasionally perform all postural movements. (Id. at 498-99.)  This would contradict Plaintiff's allegation that she is unable to lift anything at all. (Id. at 97.)  Similarly, Drs. Sophon and George G. Spellman opined that Plaintiff could perform medium and heavy work, respectively. (Id. at 340, 344-46.)  This is also contradicts Plaintiff's allegation that she is unable to lift anything at all.  Thus, by relying on the consultative examiners' findings of Plaintiff's greater functional abilities, the ALJ also implicitly rejected Plaintiff's allegations of disabling pain.

19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IV.**

**ORDER**

Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

Dated: January 25, 2010

HONORABLE OSWALD PARADA
United States Magistrate Judge